ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY CO. *v.*
ROBERTSON.

Opinion delivered April 8, 1912.

1. LIMITATION OF ACTIONS—ACTION FOR WRONGFUL KILLING.—Kirby's Digest, section 5065, providing that all actions for criminal assault and battery and false imprisonment shall be commenced within one year after the cause shall accrue, and not after, has no application to an action under Kirby's Digest, § 6285, for wilfully assaulting and killing plaintiff's intestate. (Page 366.)

2. SAME—WRONGFUL KILLING—ACTION FOR BENEFIT OF ESTATE.—Kirby's Digest, section 6290, providing that every action for the wrongful death of a person by another's act, brought for benefit of the widow and next of kin, "shall be commenced within two years after the death of such person," is not applicable to an action under Kirby's Digest, § 6285, for the benefit of the estate of the person so killed. (Page 366.)

3. SAME—ACTION FOR WRONGFUL KILLING.—An action for the wrongful killing of a person, brought by an administrator for the benefit of his estate under Kirby's Digest, § 6285, may be brought within three years after the killing occurred. (Page 366.)

4. RAILROAD—LIABILITY FOR TORT.—Although a railroad company can not itself be guilty of an assault and battery, it may, under Kirby's Digest, section 6285, be liable for an assault and battery committed by its servants in the course of their employment, though neither authorized nor ratified by it. (Page 366.)

5. SAME—LIABILITY FOR INJURY TO TRESPASSER.—A railroad company is liable for the wrongful acts of its servants in the line of their duty in unnecessarily and wantonly inflicting injury upon the person of plaintiff's intestate, from which he died. (Page 366.)

6.  DEATH—ACTION FOR WRONGFUL KILLING—DAMAGES.—Where there was evidence tending to prove that plaintiff's decedent was shoved by defendant's conductor from a train into a lake where he was drowned, and that before drowning he underwent conscious pain and suffering, the administrator of his estate was entitled to recover damages for the benefit of his estate. (Page 367.)

7.  SAME—DAMAGES—WHEN NOT EXCESSIVE.—Where there was evidence to sustain a finding that plaintiff's intestate lived only a few minutes after he was shoved into a lake by defendant's employee, an award of $1,000 as damages to the estate of intestate for his pain and suffering will not be set aside as excessive. (Page 368.)

8.  RAILROAD—LIABILITY FOR WRONGFUL KILLING.—In an action against a railroad company for the wrongful killing of plaintiff's intestate, it was not error to instruct the jury that, "notwithstanding the evidence shows that deceased had no right upon the train in question and was a trespasser, defendant's conductor in charge thereof had no right to eject him at a place nor in a manner which would subject him to great bodily harm or imminent danger of death." (Page 369.)

9.  DEATH—WRONGFUL KILLING—PUNITIVE DAMAGES.—Where plaintiff's intestate was killed by the wrongful and malicious act of defendant's servant, acting in the course of his employment, a recovery of $2,000 as punitive damages will not be disturbed. (Page 369.)

Appeal from Hot Spring Circuit Court; *W. H. Evans,* Judge; affirmed.

### STATEMENT BY THE COURT.

The plaintiff alleged that on the 12th day of September, 1908, plaintiff's intestate, Clint Ruff, boarded one of defendant's local freight trains at Walnut Lake, Arkansas, and became a passenger thereon, intending to go to Dumas, Arkansas, another station on defendant's railroad; that a short distance from Walnut Lake, while the train was upon a high trestle over a body of water, defendant's conductor in charge of the train wilfully and maliciously, negligently and carelessly, without any cause whatever, brutally assaulted Ruff and knocked him from the train into the water, where, after lingering for some time in great mental anguish and bodily suffering, he died. Plaintiff asked for damages in the sum of $5,000 by reason of the pain and suffering of Ruff and $10,000 as exemplary damages for the wilful and malicious killing of Ruff.

The answer denied all the material allegations in the complaint, and set up that Ruff undertook to board one of

defendant's through freight trains, which he well knew did not carry passengers, and, on being informed of this fact, that he wilfully, maliciously and murderously attacked the conductor with a pistol, and the conductor undertook to disarm him, and while Ruff was resisting the conductor and undertaking to take his life in the fight which ensued he fell from the train into the body of water where he was drowned. The answer alleged that Ruff came to his death by reason of his own wrongful acts, and pleaded contributory negligence. Defendant also set up that Ruff was a trespasser, that no contract relation existed between him and the defendant, and pleaded two years' statute of limitations. It also set up that Ruff was injured by an assault committed upon him by the conductor, and pleaded the one year statute of limitations.

The evidence on behalf of the appellee tended to show that Clint Ruff, at the time of his death, was about twenty years old. He weighed about 130 pounds. He boarded appellant's freight train at Walnut Lake, intending to go to Dumas, another station on appellant's railroad. The depot at Walnut Lake is about 150 yards from the lake. The train was a through freight train, and did not carry passengers. A local freight train and a through freight train are just alike as to their make-up.

One witness testified, over the objection of appellant, that he could not tell the difference between a local and a through freight.

A physician was introduced, and testified that he knew Clint Ruff, and was at Walnut Lake the night he was killed; that he was drowned. He said that a man falling in the water would possibly be conscious for two or three minutes; that his medical education did not teach him how long a man would be conscious, but he knew that fact as any ordinary citizen.

A witness testified that Ruff wanted to ride, and the conductor told him he could not. He insisted on going any way. The conductor told him to get off the train before it got to moving too fast. The conductor seemed to be mad. They were both talking loud. The conductor told Ruff that he never carried passengers, and would not let him ride. Ruff

was trying to persuade him to let him go; he said he was going to go any way. The conductor told him "No," and Ruff reached for a gun. The caboose was not over the water at the time the conductor told Ruff to get off. Ruff could have got off with perfect safety at the rate the train was going. After Ruff was off, the conductor said, "I reckon that will learn him a lesson." The witness said that he heard Ruff tell the conductor to take his hands off of him, calling the conductor a "damned son-of-a-bitch." The witness saw no gun until after it was over, when the conductor had a gun, and said it belonged to Ruff. The caboose was right over the water when the conductor shoved the boy off.

Another witness testified that he saw Clint Ruff when he first got on right behind the conductor. He got up in the caboose, and was standing about two feet from the door, inside the car. The conductor asked him what he was doing, and where he was going. Witness did not hear Ruff make any reply. The conductor told him to get off the train. This was while the train was moving. The conductor said: "Are you going to wait until we stop?" Ruff said nothing. The conductor said: "Get off, or I will throw you off," and Ruff never said anything, but he went into his pockets, and the conductor grabbed the gun, when the witness ran. The conductor put the gun in his own pocket, and witness "heard the body hit the water." The witness stated that the train was running about ten miles an hour when the conductor first told Ruff to get off. The conductor grabbed Ruff's hand just as he was pulling the gun out of his pocket.

One of the witnesses on behalf of appellant testified substantially as follows: He was a brakeman, and was on the caboose the night Clint Ruff was drowned. Ruff came inside the door of the caboose as the train was leaving town. The conductor asked him where he was going, and he said to Dumas. The conductor told him he couldn't go, and told him to get off. Ruff made no attempt to obey. The conductor said: "You will have to get off; I can't carry you." Then they got into a dispute and clinched, and when they clinched they began cursing. He heard Ruff use some words. They were cursing. He heard no threats except the conductor say: "Don't get your gun on me." The train was

running very slow on that bridge not more than seven miles an hour.

It was shown that Ruff had on no coat; that he was in his shirt sleeves. The conductor weighed about 220 pounds.

Other facts will be stated in the opinion.

*W. E. Hemingway, E. B. Kinsworthy, W. V. Tompkins* and *James H. Stevenson*, for appellant.

1. The action is *ex delicto*, and barred by the one year statute of limitations. Kirby's Dig., § 5065; 83 Ark. 6; 63 Ark. 568.

2. The death of deceased could not have been accompanied by pain and suffering. Appellee can therefore recover nothing more than nominal damages, if he can recover at all. 68 Ark. 1; Kirby's Dig., § 6285; 54 Ark. 358-360; 68 Ark. 1-3; Tiffany, Death by Wrongful Act, § 74; 9 Cush. 108; 69 Miss. 425.

3. If appellee had the right to maintain this suit, there is no evidence of conscious suffering, and the verdict should have been for nominal damages only. 43 L. R. A. 568; 145 Mass. 281; 56 Fed. 248; 125 Mass. 90; 145 U. S. 348.

4. The court's first instruction is erroneous, because there was no evidence on which to base it, nor evidence that the conductor sought to eject deceased at a dangerous place; because, if deceased provoked the difficulty, he had no right to defend himself by drawing a pistol until he had attempted to withdraw from the difficulty, and in assuming that his resistance was lawful. It is further erroneous in that under it punitive damages were recoverable, whereas, under the evidence, only nominal damages could be recovered. 37 N. W. 116; 68 Me. 279; 70 Ill. 242; 71 Ill. 242; 30 Mich. 493; 50 Wis. 645.

*M. Danaher* and *Palmer Danaher*, for appellee.

1. The action is not barred. 83 Ark. 6; 71 Ark. 71; Kirby's Dig., § 6285; 59 Ark. 215; 41 Ark. 295.

2. Death was not instantaneous. There is proof tending to show that deceased was conscious two or three minutes while drowning, evidence from which a legitimate inference could be drawn not only that death was not instantaneous but that it was accompanied by both physical and mental pain

and suffering.   64 N. H. 471; 84 Ark. 241; 59 Ark. 215.

3.   The verdict is not excessive.   68 Ark. 1; 59 Ark. 215; 84 Ark. 241.

4.   The court's first instruction correctly declares the law.   32 Ia. 534; 42 Pa. St. 365; 12 Allen 580; 80 Am. Dec. 286; 64 N. Y. 138; 26 Ind. 476; 4 Hun  684; 60 Ark. 613; 80 Ark. 345.

Wood, J.,   (after stating the facts.)   Appellant contends that the action is barred under section 5065 of Kirby's Digest, which provides:   "All actions for criminal assaults and battery and false imprisonment shall be commenced within one year after the cause of action shall accrue, and not after."

Clint Ruff was killed on the 12th of September, 1908, and the suit was instituted on June 1, 1911.   The complaint alleged that Ruff was a passenger, and that his death was caused by  the wilful, malicious and negligent conduct of appellant's servant in assaulting Ruff and knocking him from the train into the water, "where, after lingering for some time in great mental anguish and bodily suffering, he died."

At the common law such an action, if proved, would have been an action on the case.   A wrongful act committed by a defendant's servant in the line of his duty, although without the order or consent of his principal, would render the latter liable, and at common law constituted an action on the case.   *St. Louis, I. M. & S. Ry. Co.* v. *Mynott,* 83 Ark. 6.

This court held in *Emrich* v. *Little Rock Traction & Elec. Co.,* 71 Ark. 71, that the limitation of three years applies to all actions on the case except for criminal conversation and for assault and battery and false imprisonment.

Such actions as the one alleged in appellee's complaint may be brought  "in the same manner and with like effect in all respects as actions founded on contract."   Kirby's Digest, § 6285.   It is not an action for assault and battery under section 5065 of Kirby's Digest, but rather an action brought by the administrator of Clint Ruff for the benefit of his estate under section 6285 of Kirby's Digest.   *Texarkana Gas & Electric Co.* v. *Orr,* 59 Ark. 215. See also *Ward* v. *Blackwood,* 41 Ark. 295.

A railway company, being a corporation, can not itself be guilty of an assault and battery, but it may be liable under

section 6285 of Kirby's Digest for an assault and battery committed by its servants in the course of their employment, although such tortious act on the part of the servant may not be authorized in the first place or afterwards ratified by the company.

Even though the relation of passenger and carrier may not have existed between Ruff and the appellant company at the time Ruff was expelled from the train, yet it was clearly in the line of the conductor's duty to expel him, conceding that he was a trespasser, and if in so doing the appellant's servant used more force than was necessary and acted from a malicious or vindictive motive, then appellant would be liable for the injury and resultant damage to Ruff, provided there was conscious suffering between the time of his injury and his death. Even though Ruff was a trespasser, appellant would be liable for the wrongful act of its servants in unnecessarily and wantonly inflicting injury upon his person. *Railway Co. v. Hackett,* 58 Ark. 381; *St. Louis, I. M. & S. Ry. Co. v. Grant,* 75 Ark. 579; *St. Louis, I. M. & S. Ry. Co. v. Pell,* 89 Ark. 87.

It is immaterial whether the relation of passenger and carrier existed or not; the cause of action was complete for the alleged wrong to the person of Ruff done by the servant of the company while acting in the discharge of his duty, and, as we have said, is covered by section 6285 of Kirby's Digest. The right of action in the administrator for the benefit of the estate and the liability against the company is created by the statute, section 6285 · *supra.* See *Davis v. Railway,* 53 Ark. 117; *Texarkana Gas & Electric Light Co. v. Orr,* 59 Ark. 215. This is not a suit for the benefit of the widow and next of kin, and does not come under section 6289 and 6290 of Kirby's Digest.

2. The jury were warranted in finding that the conductor of appellant "shoved" Ruff into the water, and that from the time that Ruff fell into the water till his death there was an interval of possibly two or three minutes of conscious pain and suffering; for the witness testified that Ruff "was drowned, and that he was possibly conscious for two or three minutes."

Under such circumstances the finding that the pain and

suffering were not merely incidental to the death, and that death from the injury was not instantaneous, is fully sustained. No one can conceive what awful agonies must have been endured by Ruff if he was conscious that death would be the inevitable result of his falling into the lake. The jury were justified in concluding that Ruff, during his fall and after he struck the water, was conscious, and that from that time until his death he endured pain.

In the case of *St. Louis, I. M. & S. Ry. Co.* v. *Dawson*, 68 Ark. 1, we held that a verdict of $4,000 was excessive "because no appreciable interval of conscious suffering was proved." But in that case the court announced the rule above that where the deceased, "as a result of the injury underwent conscious pain and suffering," the administrator of his estate might recover damages for the benefit thereof. See, also, *Texarkana Gas & Electric Co.* v. *Orr*, 59 Ark. 215.

In the case of *St. Louis, I. M. & S. Ry. Co.* v. *Stamps*, 84 Ark. 241, where the decedent was knocked from a bridge into the river and drowned, this court sustained a judgment in favor of the administrator for the benefit of the estate for $500. This case on the point under consideration can not be distinguished in principle from that.

3. It is within the province of the jury, after hearing the evidence, to "assess a sum which in their judgment they deem a reasonable compensation, having regard for the severity and duration of the pain and suffering. The jury, in such cases, are given great latitude, for courts do not undertake to measure pain and suffering; but their judgment is not altogether uncontrolled." *St. Louis, I. M. & S. Ry. Co.* v. *Dawson, supra.*

As was said in *Aluminum Co. of N. A.* v. *Ramsey*, 89 Ark. 522: "It has been frequently said that it is difficult to find a measure of damages for pain for the obvious reason that none would be an acceptable inducement to suffer it; but when it has occurred, the compensation as such must be considered upon a reasonable basis of estimate."

Applying this rule, while one thousand dollars would seem to be the utmost limit for pain and suffering for so short an interval, yet we are not able to see that the verdict for that sum is excessive.

4. The appellant complains of the following instruction: "Notwithstanding the evidence shows that deceased had no right upon the train in question, and was a trespasser, defendant's conductor in charge thereof had no right to eject him at a place nor in a manner which would subject him to great bodily harm or imminent danger of death; and, if the conductor attemped to do this, deceased had a right to resist such effort and to use any means necessary to prevent such expulsion; and if you further find from the evidence that the conductor, in order to overcome such lawful resistance upon the part of deceased, pushed or shoved him or caused him to fall from the moving train at such dangerous place, thereby causing his death, your verdict should be for plaintiff; and if you further find that the  conductor so acted wilfully, wantonly and maliciously, or with conscious indifference to consequences from which malice will be inferred, you may, in addition to actual damages, if any, assess against defendant punitive damages in such sum as you may believe commensurate with the wrong done, as shown by the evidence."

There was evidence to warrant this instruction. Although a conductor may forcibly eject a trespasser from his train where it is necessary to use force to accomplish the purpose, more force must not be used than is necessary. The right to eject does not give the conductor the right to subject the trespasser to great bodily danger or death in expelling him unless the trespasser, by the character and  manner of his resistance, has made a resort to such violence on the part of the conductor necessary.

The evidence tended to show that the train was moving from four to ten miles an hour when the conductor informed Ruff that he could not ride, and that he must get off. When Ruff insisted on riding, the conductor, instead of stopping the train and expelling Ruff at a place that was not dangerous, attempted to remove him while the train was running, and at a place where the evidence tended to prove that any one "attempting to get off the step of the caboose would fall into a ditch." Ruff was already inside the caboose when the conductor told him to debark, and the jury might have found that the train was running, at this time, about ten miles an hour. The evidence does not show that the conductor pro-

posed or made any attempt to stop his train in order to eject Ruff. The jury were warranted in finding that the conductor, by attempting to eject Ruff where he did, subjected the latter to danger of death or great bodily harm, and that Ruff in drawing or attempting to draw his pistol was resisting this unlawful manner of expulsion. A witness testified that, "after the conductor shoved Ruff off of the bridge, he heard the conductor say: 'I guess that will teach the son-of-a-bitch a lesson.'"

It occurs to us that the jury were warranted in finding that there was no necessity for the unusual violence resorted to by the conductor on this occasion. He at least should have attempted to first remove the young man without subjecting him to any violence or any danger. This the jury might have found he did not do, but, on the contrary, that he first unnecessarily resorted to force himself, and displayed, in the manner and means adopted by him, a malicious and vindictive spirit and a reckless disregard of the consequences of his ill-temper and rash and violent conduct. Under such circumstances a verdict for punitive damages in the sum of $2,000 will not be disturbed.

The judgment is affirmed.