St. Louis Southwestern Railway Company *v.* Braswell, Administrator.

4-5413                                   127 S. W. 2d 637

Opinion delivered April 24, 1939.

*A. H. Kiskaddon, C. S. Hadley* and *Gaughan, McClellan* and *Gaughan,* for appellant.

*Willis B. Smith* and *Ben E. Carter,* for appellee.

GRIFFIN SMITH, C. J. The appeal presents three questions. First, was there support for the jury's finding that appellants' engineer could and should have discovered the perilous position of appellee's intestate in time to have averted injury if the statutory lookout had been kept? Second, did the injured man experience conscious suffering? Third, is the judgment for funeral expenses supported by law?

Appellee, administrator of the estate of F. J. Braswell, alleged the negligent killing of the intestate (his father), who at the time of the accident was 79 years of age. The only eye-witness was John Kennedy. He testified that he was engineer of appellants' passenger train out of Texarkana; that the automatic bell was in operation and the whistle was being blown. In rounding a curve "to the right" witness observed a man lying with his head on the right rail, his feet and body extending at right angle to the track. The prostrate man was first seen when the train was about 200 feet distant, a small embankment and a few bushes having prevented an earlier or a clearer view. Steam was shut off, the alarm was sounded, and brakes were put into emergency. Rate of speed was 40 or 45 miles an hour. The prone man's back was to the engine. When a stop was made the rear end of the train was about a car length past the body.

The engineer walked back to where the injured man was lying near the steps of the Cotton Belt station. Kennedy testified that "From the time the train struck Mr. Braswell until I came back to where his body was lying was about three or four minutes."

Again testifying, Kennedy said "It wasn't over two minutes when I got there. . . . [Mr. Braswell] was unconscious when I got there. . . . I would say he was living, but he was unconscious. . . . He was breathing hard, but never spoke."

"Q. If a man doesn't speak to you, do you think he is unconscious? A. No, but when he is hurt and knocked like he was, I came to the conclusion that he was unconscious. . . . It was not over six or seven minutes until the people came and moved him to the hospital."

A photograph taken by appellant's claim agent was introduced in evidence. Certain points are identified from which distances may be estimated. We think this photograph, and testimony of the witness Orr, presented a question for the jury: that is, evidence was substantial to show that if a proper lookout had been kept Braswell's perilous position would have been discovered in time to have prevented the accident. The stop was made within approximately 700 feet, and there is evidence that the prone body could have been seen at a distance of 900 feet, in spite of the curve and obstructions.

We agree with appellee that the engineer's statement that the injured man was unconscious, must be considered in the light of the reasons given for the belief. On cross-examination this witness stated it was about three or four minutes after the accident until he got back to the body. Considering the nature of the injury, the position of the body when struck, and the fact that the injured man did not speak, although he was breathing hard, the engineer concluded that the condition was one of unconsciousness.

Appellee alleged conscious pain and suffering, and therefore had the burden of proving the fact, either by direct or circumstantial evidence. The question is, Was that requirement met? We do not think it was.

Appellee directs attention to a number of our decisions and insists that the principles therein announced are applicable here.

In *Missouri Pacific Railroad Company et al.* v. *Maxwell* [1] it was said that "a father should recover a reasonable compensation for the loss of [an infant son's services], less the reasonable expenses of rearing the child. The funeral expenses amounted to about $250, and there is some evidence in the case that the child was not immediately killed, in which event its suffering must have been great." There is only a general statement in the opinion as to the purport of the evidence, without setting out in any particular what such evidence was, touching upon the issue of pain and suffering.

[1] 194 Ark. 938, 109 S. W. 2d 1254.

Recovery for pain and suffering was allowed in *St. Louis Southwestern Railway Company* v. *Rogers;*[2] in *Ashcraft* v. *Jerome Hardwood Lumber Company;*[3] in *St. Louis-San Francisco Railroad Company* v. *Pearson;*[4] in *Arkansas Light & Power Company* v. *Adcock;*[5] in *Central Coal & Coke Co.* v. *Burns,*[6] and in *St. Louis, I. M. & S. Railway Company* v. *Robertson.*[7] These cases are cited by appellee in support of his contention that the evidence was sufficient to warrant the jury in finding there was conscious suffering. In each of the cited cases, however, there was some expression or action showing coordination of mind and body.

In the Rogers Case, an injured brakeman turned over on his right side and exclaimed, "O, Lord." This occurred some minutes after the accident.

In the Ashcraft Case the workman lived thirty minutes. He "gasped and groaned, and blood came out of his mouth."

In the Pearson Case the injured fireman lived about ten minutes. He was "breathing hard. He moved his mouth and tongue, and his chest made a few moves; he was struggling a little."

In the Adcock Case a minor was injured by an electrically charged wire. After receiving the shock he exclaimed "O, me," as many as two times. After reaching the ground the young man tried to get up on his hands and knees, "then moved his arms and legs."

In the Burns Case a mine worker, after receiving an injury, was heard to cry out, and his associates found him in contact with live wires. The opinion points out that it was fairly inferable he lived fifteen minutes. "After being pulled away from the wires he moved on his all fours and tried to talk and vomit, but could not do either."

---

[2] 166 Ark. 389, 266 S. W. 281.

[3] 173 Ark. 135, 292 S. W. 386.

[4] 170 Ark. 842, 281 S. W. 910.

[5] 184 Ark. 614, 43 S. W. 2d 753.

[6] 140 Ark. 147, 215 S. W. 265.

[7] 103 Ark. 361, 146 S. W. 482.

In the Robertson Case the railway conductor shoved Clint Ruff (an alleged passenger) in such manner that Ruff fell from a freight car into Walnut Lake and was drowned. A physician testified he knew Ruff; was at Walnut Lake the night he was killed; that Ruff died from drowning; that a man falling into the water would possibly be conscious two or three minutes.

In the instant case, H. C. Hay of the East Funeral Home, testified that there were no marks on the decedent's body—"it was just on his head; . . . there was a bad lick in the back of the head; what seemed to be a fracture. I believe it was on the left side of the head, [but] it might have been in the center. . . . His nose seemed to be broken and there was a deep cut. There was blood all over his face. The lick on his head, I think, killed him."

Books on evidence, and the cases, have much to say about "speculation," and "conjecture." It is urged by those who adhere to the theory that the reasonableness of testimony, the probability of its truthfulness, the conclusions to be drawn from it, the inferences attaching to physical conditions and to the attending circumstances, are matters for sole consideration of the finders of facts, and that a verdict based upon *any* evidence found by a jury to be sufficient to sustain its actions, should not be disturbed on appeal.

The difficulty is in differentiating between *any* evidence and substantial evidence.

All judges, both trial and appellate, agree that to support a verdict the evidence must be of a convincing nature, imparting the qualities of reasonable certainty. But shall we say that in respect of such evidence the questions of certainty, of reasonableness, and of substantiality, are conclusively presumed from the verdict alone?

Must appellate judges close their eyes and their minds to the obvious fact that in a particular case the evidence, from its very nature, could not have been convincing, though it produced a given result? Shall we affirm that such evidence was *necessarily* substantial because it was favorably acted upon by the jury?

Both in theory and in practice, jurors who have been privileged to observe the witnesses, and to mark their demeanor on direct and cross-examination and under questioning of the court, are better qualified to separate truth from falsity than are judges who later examine the record for errors. The juror's situation enables him to analyze motives, to consider and compare interests and prejudices, and to weigh the relative importance of the testimony. He may apply to the issues all conclusions to be reasonably drawn from what has been said or exhibited. He may study actions and attitude, and he may mentally note and act upon what a witness has failed to say, but what has been revealed through conduct.

But in that twilight zone where a scintilla of evidence meets substantial evidence, and where they sometimes blend, jurors and judges alike find a realm of uncertainty.

It is difficult—even impossible—to lay down a constant applicable rule. Therefore, we say that on appeal all reasonable inferences should be resolved in favor of the verdict. With this pronouncement we have completed the commentary circuit, and find ourselves at the starting point of the discussion.

It would seem, however, that in any view to be taken, the issues are whether the evidence *is* substantial, and *who* is to judge of that quality. If this is not a question of law, then substantiality loses its significance, with the result that *any* testimony may suffice. If we acquiesce in this construction, there is an abdication of judicial responsibility.

Applying the foregoing principles to the case at bar, we are unable to find that conscious suffering was shown by substantial testimony.[8]

Finally, it is insisted that the verdict and judgment for funeral expenses are not supported by law.

[8] Compare *St. Louis, Iron Mountain & Southern Railway Company* v. *Dawson*, 68 Ark. 1, 56 S. W. 46; *Chicago, Rock Island & Pacific Railway* v. *White*, 112 Ark. 607, 165 S. W. 627; *Delamar & Allison* v. *Ward*, 184 Ark. 82, 41 S. W. 2d 760; *St. Louis, I. M. & S. Ry. Co.* v. *Stamps*, 84 Ark. 241, 104 S. W. 1114; *Memphis, Dallas & Gulf Railroad Company* v. *Thompson*, 138 Ark. 175, 210 S. W. 346.

Appellants objected to Instruction No. 4, generally and specifically.[9] The objection admits there was sufficient evidence to sustain the verdict complained of.

The judgment for $235 is affirmed. The judgment for conscious pain is reversed, and the cause of action therefore is dismissed.

MEHAFFY and HUMPHREYS, JJ., dissent.

[9] Instruction No. 4: "If you find for the plaintiff under the instructions in this case, then you should assess the damages to be recovered for the benefit of the estate of F. J. Braswell, deceased, at such amount as would reasonably have compensated him for the injuries suffered by him in his lifetime, as a result of such injuries, and in this connection you should take into consideration the pain and suffering, mental and physical, if any, as shown by the evidence, of the said F. J. Braswell prior to his death; and you should assess the damages to be recovered for the benefit of the next of kin of the said F. J. Braswell at such sum of money as you may find from the evidence will be fair and just compensation with reference to the pecuniary injuries, if any, resulting from the death of F. J. Braswell to next of kin."

The objections were: "Defendants objected generally to the action of the court in giving plaintiff's requested Instruction No. 4, and at the same time objected specifically to the giving of said Instruction No. 4 because there is not sufficient evidence in the record to justify a recovery for conscious pain, and because the testimony fails to show there was any conscious pain and suffering; and the instruction is erroneous on the measure of damages for the benefit of the next of kin because there is not sufficient evidence to sustain a verdict for the benefit of the next of kin except for the amount of funeral expenses."