CITY ELECTRIC STREET RAILWAY CO. v. CONERY.

Opinion delivered December 14, 1895.

ELECTRICITY—EVIDENCE OF NEGLIGENCE.—In an action for injuries received by coming in contact with a telephone wire charged with electricity, a finding that the current was communicated from a trolley wire to the telephone wire which had hung over it and become broken will be sustained, without any positive proof as to their contact, where there is no other reasonable theory to explain how the telephone wire became charged with electricity.

ELECTRIC COMPANIES—DUTY TO PREVENT ESCAPE OF ELECTRICITY.— It is the duty of an electric street railway company to use reasonable care to prevent injury by the escape of electricity from its wires suspended over streets through any other wires that may come in contact with them.

NEGLIGENCE—ELECTRIC WIRES IN CITIES.—The care exercised to prevent the escape of a dangerous current of electricity from wires suspended over streets in populous cities or towns must be commensurate with the great danger that exists, although the owners of such wires are not insurers against accidents.

NEGLIGENCE—JOINT LIABILITY.—The concurring negligence of two parties makes both liable to a third party injured thereby, if the injury would not have occurred from the negligence of one of them only.

Appeal from Pulaski Circuit Court.

ROBERT J. LEA, Judge.

*J. M. Rose* and *J. F. Loughborough*, for appellant.

1. He who seeks recovery for an injury caused by the alleged negligence of defendant must prove, not only that he has suffered loss by defendant's act or omission, but also that the act or omission was a violation of a duty required of him. 36 Ark. 607. There is no proof that White's wire touched the wire of the street railway company at all, or that a current was communicated to it from the company's wire. But, if injured by a current from the company's wire, no

negligence was proved. An electric railway is not bound, in the absence of statutory requirement, to maintain guard wires, so as to prevent telegraph wires from falling on the trolleys. Keasby on El. Wires, p. 167. The happening of an accident is not evidence of negligence to go to a jury. Whart. Negl. sec. 421. No contact of wires was shown; no negligence was shown; no evidence that the telephone wire was in dangerous condition.

2. Even admitting White's negligence, his negligence was the *proximate* cause of the injury, and there is no *causal connection* between his negligence and that of the street car company. Whart. Negl. sec. 139; *Ib.* sec 143; *Ib.* sec. 155; Booth, St. Ry. Law, sec. 134; 56 Ark. 271; 55 *id.* 521; Whart. Negl. 134; 33 Pac. 403.

3. The court erred in its instructions. Cases *supra.* 24 Ark. 251.

*H. F. Auten* for appellee.

1. The evidence amply supports the verdict. Failure to maintain guard wires was negligence *per se.* 89 Tenn. 421; 14 S. W. 863.

3. There is no error in the instructions.

4. The doctrine of primary and proximate cause does not apply; but, if it does, appellant did not ask a charge to the jury on this point, and cannot now complain.

BATTLE, J. The City Electric Street Railway Company is a corporation, and operates a street railway in the city of Little Rock, in this state, by means of electricity. Its railway traverses an extensive territory, and extends through many streets. One of the appliances used in its operation is a trolley wire, suspended by means of poles and charged with strong currents of electricity. A part of the railway was constructed in Fourth street. Above it were suspended the trolley

wires. Intersecting Fourth street at right angles is Cross street, running north and south, while Fourth runs east and west. At the southwest corner of Fourth and Cross, O. E. White resided. Three blocks distant, an the corner of Markham and Cross streets, was a drug store, which he owned and occupied. The residence and store were connected by a private telephone wire, which was suspended by passing it through loops of wire attached to insulators on poles, and was extended over the trolley wire of the street railway at Fourth and Cross streets, its distance above it, at the lowest point, being between six and twelve feet. In the course of time the telephone wire began to sag, sagged two or three feet between poles, and was finally broken near the corner of Markam and Cross by two electricians attempting to make it straight. The broken end was tied to a post, and in a few days became untied, or was again broken at or near the same place, and hung suspended in the street, the north end resting upon the ground. Two days afterwards, Arthur Conery, a lad of about ten years,—playing, perhaps, in the street in front of the home of his father and mother,—stepped upon it, and was shocked, thrown down, and burned. His mother, hearing his cries, went to his rescue, and, attempting to relieve him, was likewise thrown down. A workman, laboring near by, next went to his assistance, and cut the wire and relieved him. After this he sued White and the railway company for damages, recovered a judgment for $300, and the company appealed.

The appellant denies that the evidence shows that the trolley communicated to the telephone wire the electricity with which it was charged when appellee was shocked and burned. It says that it was not proved "that there was any contact between the two wires." It is true that there was no positive evidence to that effect, but there was only one other electric wire in that

*Sufficiency of evidence of negligence.*

vicinity, and it was an "electric light wire," which was suspended above the telephone, and there is no evidence that it ever sagged or fell sufficiently low to come in contact with any wire below it. According to the evidence, there is only one reasonable theory upon which the condition of the telephone wire at the time appellee was injured by it can be accounted for, and that is that it came in contact with the trolley wire, while down, and received the electricity with which it was charged at the time. This fact is sufficient to sustain the verdict in that respect.

<span style="margin">Duty of electric companies to prevent escape of electricity.</span> This fact being established, the next question is, upon what duty of the appellant to the appellee can this action be based? The answer to it is, upon the duty enjoined by the rule which requires every one to so use his property as not to injure another. The applicability of this rule may be shown by many illustrations. One is where an owner of a vicious animal accustomed to do hurt, knowing his habits, negligently allows him to escape. He is responsible for the mischief the animal does, because it was the duty of the owner to keep him secure. So it is lawful for any person to gather water on his own premises for useful and ornamental purposes, but it is his duty to construct the reservoirs for that purpose with sufficient strength to retain the water under all circumstances which can reasonably be anticipated, and afterwards to preserve and guard them with due care. "For any negligence, either in construction or in subsequent attention, from which injury results, parties maintaining such reservoirs must be responsible." It is the duty of railway companies to keep their tracks and rights of way free from inflammable matter, so as to prevent the communication of fire from their locomotives to adjoining property, and for a failure to discharge this duty they are liable for injuries occasioned by the neglect.

This rule applies with equal force to electric companies. They are bound to use reasonable care in the construction and maintenance of their poles, cross-arms and wires, and other apparatus, along streets and other highways. They are required to do so for the protection of persons and property. If they negligently allow their wires to fall or sag, or poles or other apparatus to fall, to the injury of another, they are responsible in damage for the wrong done, if the party injured is guilty of no culpable negligence contributing to the injury. *Uggla* v. *West End Street Railway*, 160 Mass. 351; *Haynes* v. *Raleigh Gas Co.* (N. C.), 48 Am. & Eng. Corp. Cases, 225; *Western Union Telegraph Co.* v. *Eyser*, 91 U. S. 495.

In *Texarkana Gas & Electric Light Co.* v. *Orr*, 59 Ark. 215, it appeared that the defendant owned, maintained and operated in the city of Texarkana a system of electric lights. During the night of the 22d of August, 1891, or early in the morning of the next day, its wires became disabled and out of repair, and, being either broken or disengaged from their fastenings, fell to the ground or sidewalks of the city, and lay there from 12:30 o'clock a. m. until after daylight in the morning, when the street on which they lay was thronged with people. The company ascertained that the wires were down about 2 o'clock a. m. of the same day, but not the exact locality. Ed Walker, a boy, walking along the street about 6 o'clock in the morning of the day the wires had fallen, after some conversation with a bystander about the danger of the wires, picked up a dead wire. Being told to throw it down, he obeyed, but "flipped" it, as a witness said, into the air as he did so, and the wire struck a live wire before he let it go, and thereby transmitted through him an electric current which killed him instantly. The company was held responsible for damages on account of the injury.

The main difference between the case last cited and this is, the electricity was communicated to the party injured in the former by the electric company's own wire, and in the latter by the wire of another, but the principle upon which the liability is based is the same in both cases. All persons have the right to use the streets, in or over which the wires were suspended, as public highways. Subjecting the dangerous element of electricity to their control, and using it for their own purposes, by means of wires suspended over the streets, it is their duty to maintain it in such a manner as to protect such persons against injury by it to the extent they can do so by the exercise of reasonable care and diligence. This duty is not limited to keeping their own wires out of the streets, or other public highways, but extends to the prevention of the escape of the dangerous force in their service through any wires brought in contact with their own, and of its transmission thereby to any one using the streets. Only in this way can the public receive that protection due it while exercising its rights in the highways in or over which electric wires are suspended. *Electric Ry. Co.* v. *Shelton*, 89 Tenn. 423 (14 S. W. Rep. 863); *Block* v. *Milwaukee St. Ry. Co.* (Wis.), 61 N. W. Rep. 1101.

Duty as to electric wires in cities.    Electric companies are bound to use "reasonable care in the construction and maintenance of their lines and apparatus,—that is, such care as a reasonable man would use under the circumstances,—and will be responsible for any conduct falling short of this standard." This care varies with the danger which will be incurred by negligence. In cases where the wires carry a strong and dangerous current of electricity, and the result of negligence might be exposure to death, or most serious accidents, the highest degree of care is required. This is especially true of electric railway wires suspended over the streets of populous cities or towns. Here the

danger is great, and the care exercised must be commensurate with it. But this duty does not make them insurers against accidents; for they are not responsible for accidents which a reasonable man in the exercise of the greatest prudence would not, under the circumstances, have guarded against. *Haynes* v. *Raleigh Gas Co.* (N. C.), 48 Am. & Eng. Corp. Cases, 225; *Ugglq* v. *West End Street Railway Co.* 160 Mass. 351.

In this case the cause of the accident was the falling of White's telephone wire and the contact of the same with the trolley wire of the appellant. The jury found both of them guilty of negligence—White, in permitting his wire ·to fall and remain down until appellee was hurt, and the appellant, in allowing the same to become charged with electricity by contact with its wire at the time of the injury. If this be true, the injury was the result of the concurring negligence of the two parties, and would not have occurred in the absence of either. In that case the negligence of the two was the proximate cause of the same, and both parties are liable. Shear. & Redf. on Neg. (4 ed.), sec. 31; Thompson on Negligence, p. 1088.

*As to joint liability of tort feasors.*

We have examined the evidence in this case, and the instructions of the trial court based on the same. Without setting out either, it is sufficient to say that, tested by what we have said in this opinion as to the law, we find no reversible error in the instructions, taken as a whole, and that the evidence is sufficient to sustain the verdict of the jury in this court. Judgment affirmed.