SOUTHWESTERN TELEGRAPH & TELEPHONE COMPANY *v.* MYANE.

Opinion delivered June 15, 1908.

1. ELECTRICITY—DUTY OF PERSONS SUSPENDING WIRES IN STREET.—A company or person keeping wires suspended above a street for the transmission of electricity owes to the public the duty of not only keeping such wires out of the street, but also of preventing the escape of electricity through any wires brought in contact with their own and its transmission thereby to any one using the street. (Page 553.)

2. SAME—VALIDITY OF ORDINANCE AS TO HEIGHT OF WIRES.—A city ordinance prescribing the height of the wires of telephone companies and of the street car companies and their relative distances from each other when it is necessary for such wires to cross each other is a valid municipal regulation, and a failure to comply with it is *prima facie* evidence of negligence on part of the delinquent company. (Page 553.)

3. SAME—EFFECT OF CONCURRING NEGLIGENCE.—If it be conceded that the negligence of a telephone company was separate and distinct from that of a street railway company, although they were jointly sued, nevertheless if the negligence of each was an efficient cause of the entire injury, error of the trial court in holding in effect that one of the companies was not liable did not prejudice the other company. (Page 554.)

4. SAME—WHEN NEGLIGENCE QUESTION FOR JURY.—Where the trolley pole of a street car company flew off its wire and broke an overhanging telephone wire which had been in its place for several months, and caused it to fall across the trolley wire, thereby killing plaintiff's horse, it was error to instruct the jury as matter of law that the street car company was not guilty of negligence if it complied with a municipal ordinance fixing the relative heights of street car and telephone

wires, instead of leaving to the jury to say whether, from all the facts and circumstances, the street car company was not guilty of negligence in not protecting its wire.  (Page 554.)

Appeal from Miller Circuit Court; *Jacob M. Carter,* Judge; reversed in part.

*W. J. Terry,* for appellant; *John N. Cook,* of counsel.

1.  The remark of the court made during the examination of the witness Conway was prejudicial to the appellant Telephone Company.  The ordinance does not require the telephone company to put its wires at any given distance above the trolley wire, but that the *electric light* wires shall not run nearer than five feet to the telephone wires.  It was also prejudicial in that it was calculated to impress the jury with the belief that the trolley pole could not reach beyond 22.6 feet.

2.  It was error to charge the jury in effect that if a wire of the telephone company was broken, had fallen across the trolley wire of the traction company, had become charged with electricity, and the horse came in contact with the wire and was thereby killed, this made out a *prima facie* case of negligence, and the burden devolved on each defendant to show that the same was not caused by any negligence on its part.  54 Ark. 209; 64 Ia. 762; 15 L. R. A. 33, note.

3.  It was improper to introduce the ordinance in evidence, since it did not tend to establish any of the allegations of the complaint.  But, had the complaint alleged that the telephone company was required by the ordinance to maintain the wires 25 feet above the ground and five feet above the trolley wire, and had the ordinance introduced shown these facts, the court's sixth instruction would still have been fatally defective in declaring as a matter of law that this of itself rendered the telephone company liable.  There must be a causal connection between the two, and this fact must be submitted to the jury.  Violation of an ordinance is not negligence *per se,* but is, at most, only *prima facie* evidence of negligence.  Watson on Damages, § 253; *Id.* § § 254-6; *Id.* § 256, notes 2 and 3; 58 Mich. 437.

*Joel D. Conway,* for Traction Company.

1.  . Instructions given fairly submitted the question as to the traction company's knowledge and care.  The jury could not have been misled.

2. All the proof shows that the traction company had complied with the ordinances of the city and was strictly in line of its duty when the accident occurred; and there is no proof that it knew of the position of the wire until the third car passed soon after it was broken, when it was immediately cut.

3. The complaint that the traction company might have tied down the trolley pole, etc., was not made an issue by the pleadings.

*Scott & Head,* for appellee.

1. One cannot be heard to complain of instructions unless all the instructions have not been set out in the abstract. 81 Ark. 327; 83 Ark. 133; *Id.* 356. That the horse came in contact with a broken wire belonging to the telephone company which had been charged with electricity by the traction company was undisputed. Here was a *prima facie* case of negligence on the part of the company maintaining the wire, and the burden was on the defendant to show that it was not negligent. 2 Joyce on Electric Law, § 606; 57 Ark. 429; 61 Ark. 381. And it was undoubtedly negligence on the part of both companies to fail to provide a guard wire to prevent the trolley pole from flying up and striking the wire above, since it was known that it was within reach of the trolley pole. 14 S. W. 863; 19 So. 695.

2. The ordinance was admissible in evidence, even if it had not been mentioned in the pleadings. Watson on Damages, § 277; 43 So. 723.

3. The exclusion of the testimony of witness Conway to the effect that the trolley pole might have been tied down, etc., was prejudicial to the appellee, and appellant cannot complain. 84 Ark. 594.

HART, J. Edward Myane brought suit against the Southwestern Telegraph & Telephone Company and E. J. Spencer, as receiver of the Texarkana Light & Traction Company, in the Miller Circuit Court for $150 damages for the killing of his horse, which is alleged to have been caused by the horse coming in contact with what is called a "live" wire through the negligence of said defendant companies.

The facts are substantially as follows: On the 18th day of October, 1906, in the afternoon, while a car of the defendant

electric company was running along Broad Street in the city of Texarkana, its trolley pole came off of the wire on which it was being carried, flew up and struck a telephone wire stretched above it and across the street. The force of the blow broke the telephone wire, and it fell down over the trolley wire, and extended down over the travelled portion of the street. When the telephone wire came in contact with the trolley wire, it became charged with the electricity carried by the trolley wire and thus became what is termed a "live" wire. After it had laid there about twenty-five minutes, the mother of the plaintiff came along driving his horse to a buggy. She testified that the sun was shining in her face, and that she did not see the wire until the horse became entangled in it. When the horse came in contact with the wire, it stood there, shivered a few times and fell dead.

The horse is admitted to be of the value of one hundred and fifty dollars.

A city ordinance regulating the placing of telephone and electric street car wires in the streets of Texarkana was read in evidence as follows:

"Sec. 3. The poles used by any of said companies shall be of sound timber, and all poles hereafter put up shall not be less than five inches in diameter at the small end, straight, shapely and of uniform size, neatly shaved or planed, and each of said companies shall have on all of its poles painted the initials of its name in large, black letters. The telephone and telegraph wires shall run at a height of not less than twenty-five feet above the grade of a street or alley, except in the suburbs or residence portion of said city, where they shall run at a height of not less than twenty feet above the grade of a street or alley; and the electric light or street car wire shall be placed at a height above the grade of a street or alley not less than twenty feet. Whenever it may be necessary in the construction or operation of such lines and plants for said lines to cross each other, the electric light wire shall not run nearer than five feet to said telegraph and telephone wires, and in all such cases and at all such crossings, the electric light and street car wires shall be placed under the said telegraph and telephone wires, and all such crossings shall be inspected and approved by the city engineer, to whom

notice of such intended crossing shall be given by the company making the same, before it is done; and the telegraph and telephone wires shall not be nearer each other than three feet."

George Conway, a witness for the defendant street car company, testified as follows: That he remembered the time Myane's horse was killed. That he received no notice of the bad condition of any of the wires prior to the killing of the horse. That he went down with Col. Spencer after the accident to make some measurements, and saw where the wire had been broken. That it was broken on the north side of the street. When asked how high the insulator to which the telephone wire was attached was from the ground, he answered: "To the best of my knowledge, it was twenty-seven feet or about that." He stated that the wire was attached to Crowder's hide house on the opposite side of the street, a distance of about 124.4 feet, 14 feet above the side walk. That the distance from the hide house to the center of the street car track was 70.4 feet; from the center of the track back to the pole on the north side was 54 feet. That a wire could not have been stretched across there without having some sag in it. That, to the best of his recollection, the telephone wire was a little over 22 feet from the ground at the point where it crossed the trolley wire. That he measured the height of the car and the trolley pole, and that, when standing perpendicularly, the trolley pole would reach 22.6 feet above the ground. That if the telephone wire had been stretched over 22.6 feet above the grade of the street, the trolley pole could not have touched it. That the trolley wire on Broad Street at the place where the accident occurred was 18 feet above the ground. The accident occurred in the business section of Texarkana. The telephone wire had been put up there three, four or five months prior to the accident, and crossed the street at the place where the accident occurred.

There was a jury trial; a verdict of $150 was returned against the telephone company. Whereupon the court entered judgment against the telephone company for that amount, and discharged the street car company from liability. The telephone company has appealed to this court, and Edward Myane has taken a cross appeal from the judgment in favor of the street car company.

In *City Electric Street Railway Co.* v. *Conery,* 61 Ark. 381, speaking of the duties of persons using a street for suspending wires charged with electricity, this court said:

"Subjecting the dangerous elements of electricity to their control and using it for their own purposes by means of wires suspended over the streets, it is their duty to maintain it in such a manner as to protect such persons against injury by it, to the extent they can do so by the exercise of reasonable care and diligence. This duty is not limited to keeping their own wires out of the streets, or other public highways, but extends to the preservation of the escape of the dangerous force in their service through any wires brought in contact with their own, and of its transmission thereby to anyone using the streets. Only in this way can the public receive that protection due it while exercising its rights in the highways in or over which electric wires are suspended."

It is manifest that in passing the ordinance prescribing the height of the wires of the telephone company and of the street railway company and their relative distance from each other when it was necessary for their wires to cross each other, the council recognized the danger to the public when these wires came in contact, and had in view the protection of persons who had a right to travel upon the streets. The passage of the ordinance was a municipal regulation, authorized by the laws of the State, and has the force of a statute within the limits of the city. It was the duty of the defendant companies to comply with the ordinance, and a failure to do so is *prima facie* evidence of negligence on their part. These principles are established by the following authorities: *Hayes* v. *Michigan Central Rd. Co.,* 111 U. S. 228; *Mitchell* v. *Raleigh Electric Co.,* 85 Am. St. Rep. (N. C.), 735; *Brush Electric Light & Power Co.,* v. *Lefevre,* 55 S. W. (Tex. Civ. App.), 396; *Knowlton* v. *Des Moines Edison Light Co.,* 90 N. W. (Iowa), 818; *Clements* v. *La. Electric Light Co.,* 44 La. Ann. 692.

We have read and considered the instructions given by the court, and, without setting them out, we may say that, when taken as a whole and tested by the principles of law announced above, there is no reversible error in them.

In examining the witness George Conway, the following appears in the record:

"Q. It (referring to the trolley pole) will go straight up the moment it escapes from the trolley wire anyway? 'A. Yes, sir. The court: What is the purpose of that testimony? I think it is immaterial. They had a right to operate that thing in the most practical way, and if the ordinance requires that the Telephone Company put its wires a certain distance above its trolley wire, and that the length of the car and the height of the pole would not reach that requirement, I can not see how it could be negligence on the part of the Street Car Company to allow it to fly up there."

The plaintiff and the defendant telephone company excepted to the ruling of the court.

Appellant was not prejudiced by the remarks of the court; for, as stated in the case of *San Marcos Electric Light & Power Co.* v. *Compton,* 107 S. W. (Tex Civ. App.), 1151: "If it be conceded that the negligence of each defendant was separate and distinct, and that they were not joint tort feasors, nevertherless, as the negligence of each was an efficient cause of the entire injury, each must be held liable to the full extent of the injury."

.Counsel for appellant allege as error the remark of the court, in presence of the jury, that one of the witnesses for appellant, who was testifying about the height of the telephone wire at the place where the accident occurred, did not know anything about it. The record shows that the witness had not measured the distance, and was only testifying from his judgment after having viewed it. The witnesses for the defendant street railway company testified about the distance based upon actual measurement. This testimony was not attempted to be contradicted by the plaintiff in the case, and the record shows that the purpose of the testimony on this point by the telephone company was not to contradict it. We are of the opinion that no prejudice resulted to the telephone company from the remarks of the court.

We are, also, of the opinion that the averment in the complaint was sufficient to permit the introduction of the ordinance. *Brush Electric Light & Power Co.* v. *Lefevre, supra.*

The remarks of the court made in the presence of the jury

during the examination of the witness George Conway were prejudicial to the rights of Edward Myane, plaintiff below and now cross-appellant. The court practically told the jury that the defendant owed no duty to the public except that provided by the ordinance, and that it was not guilty of negligence if it complied with the ordinance. Obviously, it knew that its trolley pole would at times fly off of its trolley wire. It also knew, or ought to have known, that the telephone wire was not a sufficient distance above the ground to prevent the trolley pole from striking it in case of flying off its own wire, for the telephone wire had been only at the height it was at the time of the accident for several months prior thereto. The court in effect told the jury as a matter of law that the street car company was not guilty of negligence if it complied with the ordinance, when it should have left to the jury to say whether, from all the facts and circumstances in the case, the street car company was not guilty of negligence in not protecting its wire. We think this is established by the authorities cited *supra*.

For this error the judgment in favor of the Texarkana Light & Traction Company is reversed, and the cause as to it remanded for a new trial. The judgment against the Southwestern Telegraph and Telephone Company is affirmed.