PINE BLUFF COMPANY *v.* BOBBITT.

Opinion delivered May 25, 1925.

1. ELECTRICITY—FAILURE TO DISCOVER CONDITION OF WIRE.—Where a child was injured by coming in contact with an electric company's guy wire, which had become charged because a wire not belonging to the company was fastened to the guy wire and thrown across an uninsulated high-tension wire, the only issues for the jury were as to the length of time the condition had existed, and whether the company was negligent in not discovering and removing the foreign wire.

2. ELECTRICITY—DANGEROUS CONDITION OF WIRE—LIABILITY.—A requested instruction that if the wire which caused injury was placed over defendant's electric wire and connected with its guy wire by some unknown person, so as to charge the guy wire, thereby injuring plaintiff, and if the company did not know of such connection and could not have known of it by the exercise of ordinary care, it would not be liable, *held* correct.

3. ELECTRICITY—RULE AS TO CARE OF WIRES.—The rule that electrical companies must use a high degree of care with reference to wires carrying a dangerous current of electricity to keep them properly insulated not only applies to its own wires, but extends

to prevention of the escape of dangerous current through any wires brought in contact with their own.

4. ELECTRICITY—REASONABLE CARE—BURDEN OF PROOF.—Proof that a child was injured by coming in contact with an electrical company's guy wire made out a *prima facie* case of the company's negligence, and the burden was on it to show that it used ordinary care to discover and remove a foreign wire which caused the guy wire to become charged, and could not excuse itself by simply showing that the current was connected to the guy wire from its tension wire through a foreign wire attached to the two by some third party.

5. ELECTRICITY—FOREIGN WIRE—EVIDENCE.—In an action for injuries from contact with an electrical company's guy wire, where the undisputed evidence exonerated the defendant company from liability for placing a wire which connected its high-tension wire with a guy wire, evidence as to how the foreign wire was placed by a third person, and the motive of placing it was properly excluded as immaterial.

6. EVIDENCE—ACTS OF DEFENDANT'S AGENT.—In an action for injuries from contact with an electrical company's guy wire, evidence that an employee of the company attempted to induce a witness to admit that he had attached a foreign wire to defendant's guy and high-tension wires on promise that the company would pay his fine *held* inadmissible, in absence of a showing that the employee had authority to make such agreement.

7. WITNESSES—IMPEACHMENT AS TO COLLATERAL MATTER.—In an action for injuries from contact with an electrical company's guy wire, evidence that the company's employee attempted to induce witness to admit that he had attached a foreign wire to defendant's guy and high-tension wires, on promise that the company would pay his fine, was not admissible to impeach the company's witness, who, on cross-examination, denied that such offer had been made, and plaintiff was bound by the negative answer of such witness.

8. TRIAL—WAIVER OF OBJECTION TO EVIDENCE.—Appellant did not waive his objection to incompetent testimony objected to by him by subsequently introducing contradictory testimony.

Appeal from Jefferson Circuit Court; *T. G. Parham,* Judge; reversed.

*F. G. Bridges,* for appellant.

*Rowell & Alexander,* for appellee.

HUMPHREYS, J.   L. W. Bobbitt, father of Lawson W. Bobbitt, brought suit on his own account and as guardian

of his child to recover damages for permanent injuries received by his child from coming in contact with a guy wire of appellant company which was carrying a heavy voltage of electricity, through the negligent operation of the plant. The alleged negligence consisted in the failure of appellant's servants to discover and remove a wire, one end of which was securely wrapped around one of its guy wires near the ground and the other hanging across an uninsulated section of its high-tension wire, carrying 2,300 volts of electricity, thereby permitting a heavy current of electricity to pass from said high-tension wire through the lower part of the guy wire where the child, while playing and gathering flowers along the side of the road, came in contact with it.

Appellant filed an answer denying that the wire connecting this high-tension wire with its guy wire was a part of its system, and that its servants negligently failed to discover and remove same.

The cause was submitted to a jury upon the pleadings, testimony, and instructions of the court, which resulted in a verdict and consequent judgment in favor of each appellee, from which is this appeal.

There is no dispute in the evidence that the injury was caused by current of electricity passing through one of appellant's guy wires, with which the child came in contact while playing near the roadside. The purpose of the guy wire was to hold the post in place where the line changed its course, and not for the purpose of conveying a current of electricity. It is also undisputed that the wire connecting the high-tension wire with the guy wire was foreign to and no part of the system. One end of it was securely attached to the guy wire and the other end, which was tied to a rock, was hanging over an uninsulated section of the high-tension wire attached to the top arm of the post.

The testimony is in conflict as to how long this condition in the wire had existed, and as to whether appellant was negligent in not discovering and removing the

foreign wire before the injury. The conflict in the evidence in these particulars presents the only real issues in the case, and the cause should have been sent to the jury upon these issues only. We think instruction No. 14, presented by appellant and refused by the trial court, was a correct, accurate declaration of the law applicable to the disputed issues of fact in the case, and should have been given, for the rule therein announced was not clearly covered in the instructions given by the court to guide the jury. Said instruction is as follows:

"If you find from the evidence that the wire causing the injury was placed by some unknown third party over the defendant's electric wire and connected with the guy wire so as to charge said guy wire, thereby injuring the plaintiff, Lawson Bobbitt, and if you further believe that the defendant company did not know of such connection or danger, and could not have known of same by the exercise of ordinary care, then the defendant would not be liable, and you should so find."

Instruction No. 14 is criticised by appellee because it required the exercise by appellant of only ordinary care to discover the dangerous condition caused by the connecting wire. This requirement was correct, and conformed to the rule announced by Joyce on Electrical Law, quoted approvingly by this court in the case of *Texarkana Company* v. *Pemberton*, 86 Ark. 329, as follows:

"Electrical companies, in the maintenance of their wires, owe to their employees, as well as to others who may of right, either for pleasure or work, be in the vicinity of such wires, the duty of exercising reasonable care, that is, such care as a reasonably prudent man would exercise under the same circumstances. We have already stated that reasonable care or ordinary care is a degree of care varying with the circumstances of each case, and which, in the case of electrical wires carrying a dangerous current of electricity, requires the exercise of a high degree of care to keep them properly insulated and so suspended as not to endanger lives."

The rule not only applies to wires owned and used by an electric company "but extends to the prevention of the escape of the dangerous force in their service through any wires brought in contact with their own, and its transmission thereby to any one using the streets. *Electric Street Ry. Co.* v. *Coney,* 64 Ark. 381; *Southwestern Tel. & Tel. Co.* v. *Myane,* 86 Ark. 588.

Appellant contends that the instructions given by the trial court as a guide to the jury were erroneous because they placed the burden upon appellant to justify or excuse itself from transmitting the current of electricity through its guy wire which burned the child. Under the circumstances of the injury a *prima facie* case of negligence on the part of appellant was made, which entitled appellee to go to the jury, and placed the burden on appellant to justify or excuse its negligence. The undisputed evidence revealed that the child received the injury from coming in contact with appellant's guy wires, while playing near the roadside, which should not have been carrying electricity in the proper operation of the plant. This guy wire was under the control and management of appellant. *Southwestern Tel. & Tel. Co.* v. *Bruce,* 89 Ark. 581; *Commonwealth Public Service Co.* v. *Lindsay,* 139 Ark. 283; *Arkansas Light & Power Co.* v. *Jackson,* 166 Ark. 633. It was appellant's current of electricity which burned the child, and it could not excuse itself by simply showing that the current was connected to the guy wire from its tension wire through a foreign wire attached to the two by some third party. It was required to do more than that to exculpate itself from the *prima facie* case of negligence made by proof of the injury and the manner thereof. It must be shown, in addition, that it used ordinary care to discover and remove the foreign wire. 9 R. C. L., pp. 1215, 1217 and 1218. In the case of *City Electric Street Ry. Co.* v. *Conery,* 61 Ark. 381, this court, in comparing that case with the case of *Texarkana Gas & Electric Light Co.* v. *Orr,* 59 Ark. 215, said: "The main difference between

the case last cited and this is, the electricity was communicated to the party injured in the former by the electric company's own wire, and in the latter by the wire of another, but the principle upon which the liability is based is the same in both cases. All persons have the right to use the streets, in or over which the wires were suspended, as public highways. Subjecting the dangerous element of electricity to their control, and using it for their own purposes, by means of wires suspended over the streets, it is their duty to maintain it in such a manner as to protect such persons against injury by it to the extent they can do so by the exercise of reasonable care and diligence. This duty is not limited to keeping their own wires out of the streets or other public highways, but extends to the prevention of the escape of the dangerous force in their service through any wires brought in contact with their own, and of its transmission thereby to any one using the streets. Only in this way can the public receive that protection due it while exercising its rights in the highways in or over which electric wires are suspended.''

While the burden in the whole case rested upon appellee after a *prima facie* case was made, the instructions given by the court correctly placed the burden upon appellant to justify or excuse its negligence. The instructions given by the court, in so far as they covered the issues involved, were substantially correct and impervious to attack by general objections.

Appellant next contends that the court erred in excluding testimony relative to experiments which might indicate how the end of the wire with the rock attached might have been thrown over the tension wire, and opinion evidence as to what motive might have inspired the third party to commit the act. We regard this testimony as wholly immaterial, after it was shown by the undisputed testimony that such wire was not a part of the construction of the plant, and could serve no useful purpose, or, in other words, that it was a foreign wire. It

is immaterial how it was placed there or what motive inspired it to be done, if appellant's linemen did not do it. We do not see how the exclusion of these pieces of evidence could have prejudiced appellant's cause.

Appellant's next and last contention for a reversal of the judgment was the admission of the testimony of Max Fry to the effect that Clint Green, who was working for appellant, attempted to induce him to admit that he had attached the foreign wire to the two wires in question upon a promise that appellant would pay his fine. Such an agreement on the part of Clint Green was not within the scope of his apparent authority, and it was not shown that he had actual authority to make such an agreement, hence inadmissible to bind appellant company. The court erred in admitting it.

On account of the errors indicated the judgments are reversed, and the causes are remanded for a new trial.

HART, J. My dissent is based on the ground that the matters embraced in instruction No. 14 asked by the defendant and refused by the court is substantially covered by instruction No. 5, which was given and reads as follows:

"The defendant, Pine Bluff Company, is claiming that the connection between its high tension wire and its guy wire was made by a connecting wire which was placed between the two wires by some third person. The burden is upon the Pine Bluff Company to show by a preponderance of the evidence that the said connecting wire was actually placed there by some third person, and even this would be no defense against its liability in this case unless it has also shown by a preponderance of the evidence that the dangerous condition of its guy wire could not have been detected and corrected by the exercise on its part of ordinary and reasonable care in time to have prevented the injuries sustained by Lawson Bobbitt."

Instruction No. 14 is set out in the majority opinion and need not be repeated here. I believe a comparison

of the two instructions shows that the instruction given fully and fairly covers the matters embraced in the refused instruction, and it is well settled that the trial court need not repeat instructions on the same phase of the case. Neither do I think that any prejudice resulted from the admission of evidence as indicated in the opinion.

HUMPHREYS, J., (on rehearing). On motion for rehearing, learned counsel for appellee strenuously insist that this court erred in admitting the testimony of Max Fry to the effect that Flint Green who was working for appellant, attempted to induce him to admit that he had attached the foreign wire to the two wires in question, upon a promise that appellant would pay his fine. It is urged that this testimony was admissible for the purpose of impeaching P. C. Tucker, one of appellant's witnesses, who testified that Clint Green did not tell Max Fry that if he would admit attaching the foreign wire to the other two wires, the company would pay his fine. Appellant did not ask Tucker anything about this matter on direct examination. Appellee propounded the question to Tucker on cross-examination. Tucker denied that any such conversation occurred. The purported subject-matter of the conversation was incompetent and entirely collateral. Appellee was bound by the negative answer of Tucker and had no right to impeach his statement, same being collateral and incompetent as original testimony. *Furlow* v. *United Oil Mills*, 104 Ark. 489. Appellant objected and excepted to the introduction of Max Fry's testimony in this particular, and did not waive the error committed by the court in admitting it by afterwards introducing the testimony of Basham in contradiction of Fry's statement. It was the privilege of appellant, after saving its exception to the inadmissible and prejudicial testimony of Fry, to remove the damaging effect thereof, if possible, by the introduction of testimony in contradiction of his statement.

As the reversal of the judgment must stand on account of the error of the trial court in admitting Fry's testimony, we deem it unnecessary to decide whether instruction No. 14 requested by appellant and refused by the court was fully covered by instructions Nos. 5 and 6 requested by appellee and given by the court. We think, on a retrial of the cause, instruction No. 14 should be given as an alternative instruction affirmatively presenting appellant's theory of the case.

The motion for rehearing is overruled.

HART, J., I dissent from the additional opinion of Judge HUMPHREYS on rehearing to the effect that the testimony of Max Fry was collateral. Max Fry testified that, after the accident to Lawson Bobbitt, Clint Green in the presence of P. C. Tucker told the witness that if he would admit that he put the foreign wire there which caused the accident and pay a small fine, the appellant would pay the fine for him.

It seems to me that this testimony was admissible as tending to be an admission on the part of appellant that it or one of its servants, had been guilty of negligence and was endeavoring to shift that negligence to another person who was not in its employment and for whose acts it was not responsible. P. C. Tucker was the regular claim agent of appellant, and as such made an investigation of the accident. When he went to examine the boys of the Industrial School, he took Clint Green with him. He testified that the latter was talking and acting for the company on that occasion. This to my mind made the company responsible for what Clint Green did in the premises. It is true that Tucker was asked if he did not hear Clint Green tell Max Fry that, if he would admit that he had put the wire there and pay a small fine for it, the company would pay the fine, and he answered no. If the testimony was admissible, the fact that Tucker answered "No" to the question would not make it collateral.

I do not think it is sound to say that if a party to an action attempts to prove a fact which is competent by a witness, he is concluded from proving that fact because the first witness asked with reference to that fact or alleged fact answered in the negative. •It is admitted that Tucker was the regular claim agent of the company, and as such it was made his duty to investigate the accident. According to his testimony Clint Green was his assistant, and on the occasion in question was talking and acting for the company. Then he had as much apparent authority in the premises as Tucker. I do not think it is in any sense a sound proposition of law to say that a claim agent of a corporation can attempt to induce a witness to testify that he was responsible for a certain act of negligence, instead of the company or its servants, and then allow the company to escape the responsibility of such act or conduct.

In this connection it may be stated that the majority opinion virtually concedes that I was correct in my dissenting opinion of the analysis of the instructions and I repeat that a simple comparison of the instructions in question shows this to be true.