## MORGAN *v.* COCKRELL.

## Opinion delivered May 2, 1927.

1. ELECTRICITY—CARE AS TO HIGH VOLTAGE WIRES—INSTRUCTION.—In an action against a lighting company for the death of a workman, when an iron rod he was using came in contact with a high voltage wire, an instruction that defendant owed a high degree of care to keep high voltage wires properly insulated and suspended, so as not to endanger the lives of others, *held* error, in view of an instruction that defendant was required only to exercise ordinary care for his own safety.

2. ELECTRICITY—DUTY TO EXERCISE ORDINARY CARE.—Electric companies in stringing and maintaining wires in the street for service to the public are bound to exercise only ordinary care for the protection of those having the right to use the streets, such care varying with the circumstances of each case, and having in view the danger to be avoided and the likelihood of injury therefrom.

3. ELECTRICITY—INSTRUCTION AS TO DANGER NOT ANTICIPATED.—In an action for death resulting from the contact of an iron rod with uninsulated high voltage wire in the street, refusal of defendant's instruction, that, if decedent's death could not have been anticipated by defendant as a result of the erection and maintenance of its wires, the verdict should be for defendant, *held* error.

4. ELECTRICITY—INSURANCE AGAINST INJURY—INSTRUCTION.—In an action for death resulting from contact of an iron rod with an uninsulated high-tension wire in the street, where no instruction was given defining the term "proximate cause," it was error to refuse to instruct that defendant was not an insurer of the safety of persons in the streets where the wires were located, and could only be held for negligence, and that, if it used ordinary care in maintenance of its wires, it was not guilty of negligence.

5. NEGLIGENCE—INSTRUCTION AS TO PROXIMATE CAUSE.—In an action for death resulting from contact. of an iron rod with an uninsulated high-tension wire in the street, an instruction that, if the injury could not have been reasonably anticipated by a person of ordinary prudence as the probable result of negligence, negligence would not be actionable, *held* incorrect, and its refusal not error.

6. ELECTRICITY—INSTRUCTION AS TO ACCIDENT.—In an action for death resulting from contact of an iron rod with an uninsulated high-tension wire in the street, refusal of an instruction that, if plaintiff's injury was due solely to accident, the verdict should be for defendant, *held* error.

7. ELECTRICITY—JURY QUESTION.—In an action for death resulting from contact of an iron rod with an uninsulated high-tension wire in the street, the question whether the injury would have occurred whether the wire was uninsulated or not, *held* for the jury.

Appeal from Miller Circuit Court; *J. H. McCollum,* Judge; reversed.

STATEMENT BY THE COURT.

This suit is from a judgment for damages recovered by the widow and next of kin against the appellant operating a light company, for the death of the husband and father of plaintiffs, alleged to have been caused by the negligence of the light company in using wires without insulation or from which the insulation had worn off for carrying a high voltage of electricity, and in stringing or maintaining the wire not sufficiently high from the surface of the street.

The testimony tends to show that the deceased was working at the Home Gin Company, on Daugherty Avenue, in Ashdown, when he was killed. The boiler room where deceased was at work extended out over the sidewalk, and the door of the room was about five feet distant from where the wires were strung on poles about 15 feet above the street level. The deceased had been working there 10 days, and before had worked in another plant, where he had charge of the dynamos generating electricity. He went out of the boiler-room and picked up an iron rod 18 feet long, leaning against the side of the room, with which to swab out the furnace of the boiler, and, in returning, struck the end of the rod against the light wire, and was instantly killed.

The primary wire, carrying 2,300 volts of electricity, was 15½ feet above the street at the place where the iron rod came in contact with it, and was bare, the insulation having been worn off for some time—two or three weeks. The secondary wires were 20 inches lower than the high voltage wire, and only carried 110 volts of electricity, which was not enough to seriously injure a person coming in contact with it. The wires were carried on

this street on 25-foot poles, imbedded about 5 feet in the ground, the primary wire being nearer the top of the pole and about 20 inches above the secondary or low voltage wires. There were no other houses in this block on the same side of the street with the gin-house, and had never been, and one end of the street was closed by the railroad station. The nearest pole to the boiler room was about 15 feet distant, and it could easily be seen that there was no insulation on the wire for 5 or 6 feet at the point of contact with the iron rod, and it was apparent that the insulation had been off for a long time. The deceased had been working there for two weeks, repairing around the gin. The swab, before the injury, was kept on the outside of the gin and had been for 12 months, but is now kept on the inside of the boiler-room.

The deceased was known to have worked at the United Oil Mills, as oiler, oiling the generator and motors and switching on and off the electricity. The man working with him at the time of the injury knew that wires and poles were there in the street, and, while he did not know the voltage carried by the wire, knew that they were dangerous.

No one saw the occurrence of the rod coming in contact with the wire, and this witness supposed that Cockrell was pulling or lifting the rod and walking backwards when it struck the wire. The rod was found leaning against the bare wire after Cockrell was heard to fall. Witness measured the distance at the point where the rod was on the wire, and found it 13 feet above the ground. The testimony is undisputed, however, that the high voltage wire was 20 inches or so above the secondary wire.

Deceased was 24 years old at the time of his death, leaving a widow and one child 6 years old, and was earning on an average about $100 per month, all of which was consumed in supporting his family.

The court instructed the jury, giving instruction No. 1 over appellant's objection, and amended other instruc-

tions over like objection, and refused to give its requested instructions Nos. 5, 7, 8 and 10, as follows:

"No. 1. You are instructed that one using electric wires carrying a dangerous voltage or current of electricity and placing the same on poles in the streets, owes the public a high degree of care to keep said wires properly insulated and suspended as not to endanger the lives of others lawfully within the vicinity of said wires; and in this case you are instructed that, if you find from a preponderance of the evidence that the defendant's electric wires about which the witnesses have testified carried a dangerous voltage or current of electricity, and you further find that the defendant negligently failed to exercise a high degree of care in the construction or maintenance of said wires by negligently failing either to keep said wires properly insulated or properly suspended, so as not to endanger the lives of others lawfully within the vicinity thereof, and you further find that, by reason or because of the defendant's said negligence, if any, the deceased, Louis Cockrell, while in the exercise of ordinary care for his own safety, was injured, then it will be your duty to find for the plantff."

"No. 5. If you find that the plaintiff's injury was due solely to an accident, your verdict will be for the defendant."

"No. 7. In order for you to hold that the negligence, if any, of the defendant was the proximate cause of the injury, the plaintiff must show by a preponderance of the evidence that the injury was the natural and probable consequence of the alleged negligence; in other words, the proximate result must be the natural and probable consequence which ought to have been foreseen, or reasonably anticipated in the light of the attendant circumstances; hence it follows that, if the injury in this case could not have been reasonably anticipated by a person of ordinary prudence and intelligence as the probable result of the acts of negligence complained of, then you are instructed that the negligence, if any, of the defendant is not actionable, and your verdict must be for defendant.

"No. 8. If the injury and death of the decedent could not have been reasonably anticipated by the defendant as a result of the erection and maintenance of its wires, as they were in fact erected and maintained at the point of the injury, then you are instructed that the defendant is not liable, and your verdict must be for the defendant."

"No. 10. You are instructed that the defendant was not an insurer of the safety of the persons in or in the vicinity of the streets where its wires and poles were located, and can only be held, if held at all, for negligence on his part. In this connection you are advised that the defendant was not required to anticipate every possible danger and provide against the same, but was only required to use ordinary care to that end, and, if it used ordinary care in the erection and maintenance of its wires and poles, it was not guilty of negligence, and your verdict must be for the defendant."

The jury returned a verdict, assessing damages at $15,000, and from the judgment thereon this appeal is prosecuted.

*Will Steel* and *James D. Head,* for appellant.

*Pratt P. Bacon, June R. Morrell* and *Feazel & Steel,* for appellee.

KIRBY, J., (after stating the facts). The trial court appears to have had an erroneous view of the degree of care required of appellant in the maintenance and operation of its light wires for giving service to the city, as shown in instruction No. 1, which stated that it "owed the public a high degree of care," and that, if the defendant "failed to exercise a high degree of care," etc., and the deceased was injured "while in the exercise of ordinary care for his own safety," plaintiff should recover, apparently requiring the use of a higher degree of care of the appellant than ordinary care, as required under the law.

In *City Electric Street Railway Co.* v. *Conery,* 61 Ark. 381, 33 S. W. 426, 31 L. R. A. 570, 54 Am. St. Rep. 262, the court said:

"All persons have the right to use the streets in or over which the wires were suspended, as public highways. Subjecting the dangerous element of electricity to their control, and using it for their own purposes, by means of wires suspended over the streets, it is their duty to maintain it in such a manner as to protect such persons against injury by it to the extent they can do so by the exercise of reasonable care and diligence. This duty is not limited to keeping their own wires out of the streets, or other public highways, but extends to the prevention of the escape of the dangerous force in their service through any wires brought in contact with their own, and of its transmission thereby to any one using the streets." *** "Electric companies are bound to use 'reasonable care in the construction and maintenance of their lines and apparatus—that is, such care as a reasonable man would use under the circumstances—and will be responsible for any conduct falling short of this standard. This care varies with the danger which will be incurred by negligence. In cases where the wires carry a strong and dangerous current of electricity, and the result of negligence might be exposure to death, or most serious accidents, the highest degree of care is required."

In *Texarkana Telephone Co.* v. *Pemberton*, 86 Ark. 329, 11 S. W. 257, the court quoted approvingly from 2 Joyce on Electric Law, as follows:

"Electrical companies, in the maintenance of their wires, owe to their employees, as well as to others who may of right, either for pleasure or work, be in the vicinity of such wires, the duty of exercising reasonable care, that is, such care as a reasonably prudent man would exercise under the same circumstances. We have already stated that reasonable care or ordinary care is a degree of care varying with the circumstances of each case, and which, in the case of electrical wires carrying a dangerous current of electricity, requires the exercise of a high degree of care to keep them properly insulated and so suspended as not to endanger lives."

In *Southwestern Tel. & Tel. Co.* v. *Bruce,* 89 Ark. 581, 117 S. W. 564, a case of an injury resulting from wires strung across vacant lots, the court held that the company owed the duty to plaintiff and those accustomed to going on or across the lots to exercise "due and reasonable care" in maintaining its wires, saying:

"This electric company owed the duty to plaintiff to use ordinary care to prevent injury by the transmission through its wires, suspended over the streets and those vacant lots, of electricity escaping from any other wires that might come in contact with them."

In *Southwestern Tel. & Tel. Co.* v. *Abeles,* 94 Ark. 254, 126 S. W. 724, the court quoted from the Texas Court of Civil Appeals relative to the duty resting upon telephone companies to adopt precautions for preventing atmospheric electricity from entering buildings over their wires, approving the rule as stated by the Supreme Court of Vermont: "Having undertaken to place and maintain the instrument in the house and connect it with its telephone line for the use of the deceased, in so doing it was under the duty to exercise the care of a prudent man under like circumstances."

In *Pine Bluff Company* v. *Bobbitt,* 168 Ark. 1019, 273 S. W. 1, where the negligence consisted in the failure to discover and remove a foreign wire from an uninsulated section of high tension wire of the company, carrying 2,300 volts of electricity, permitting the heavy current to pass through the lower part of the guy wire and injure a child playing and gathering flowers by the wayside, coming in contact with it; the court held that the company was only bound to the exercise "of ordinary care" to discover the dangerous condition caused by the connecting wires, saying: "This requirement was correct and conformed to the rule announced by Joyce on Electric Law," quoted approvingly in *Texarkana Telephone Co.* v. *Pemberton, supra,* as already stated herein.

It will be seen from these decisions that it has long been the settled law in this State that electric companies, in the stringing and maintaining of their wires in the

streets of the cities to give service to the public, are only bound to the exercise of ordinary and reasonable care for the protection of all who have right to the use of the streets, such reasonable and ordinary care varying with the circumstances of each case, having in view the dangers to be avoided and the likelihood of injury therefrom, which may require a high or the highest degree of care under the particular circumstances. The court erred in disregarding this rule in giving said instruction No. 1, in telling the jury that a high degree of care was required to be exercised by the appellant in maintaining and operating its wires, and refusing to give any instruction requiring the exercise of ordinary care only, and defining it, by the appellant; and this error was accentuated by telling the jury that only the exercise of ordinary care was required by the deceased for his own safety.

It is next contended that the court erred in refusing to give each of appellant's requested instructions Nos. 7, 8, and 10, submitting to the jury the question of whether the negligence, if established, was the proximate cause of the injury to decedent.

No instruction was given defining the term "proximate cause" nor submitting the question to the jury, the court only mentioning it in instruction No. 6, given, saying it was necessary for the plaintiff to show that the defendant was negligent in some particular matter alleged in the complaint, and also "that the negligence, if any, so shown was the direct and proximate cause of the injury to plaintiff's decedent."

In *Pulaski Gas Light Co.* v. *McClintock,* 97 Ark. 576, 134 S. W. 1189, 32 L. R. A. N. S. 825, the court, answering the question, "What was the proximate cause of the injury?" said:

"This is not a question of science or knowledge, and is a question ordinarily for the jury, to be determined as a fact from the particular situation, in view of the facts and circumstances surrounding it. The primary cause may be the proximate cause of disaster, though it may operate through successive instruments. *Milwaukee, etc.*

*Ry. Co.* v. *Kellogg,* 94 U. S. 476, 24 L. ed. 256; *Waters-Pierce Oil Co.* v. *Deselms,* 212 U. S. 177, 53 L. ed. 463."

"But it is generally held that, in order to warrant a finding that negligence, or an act not amounting to wanton wrong, is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances." *Milwaukee, etc., Ry. Co.* v. *Kellogg, supra.*"

The court there also quoted from our decisions, *Gage* v. *Harvey,* 66 Ark. 68, 48 S. W. 898, 74 Am. St. Rep. 70:

"In determining whether an act of a defendant is the proximate cause of an injury, the rule is that the injury must be the natural and probable consequence of the act—such a consequence, under the surrounding circumstances of the case, as might and ought to have been foreseen by the defendant as likely to flow from his act."

And *St. L. I. M. & S. Ry. Co.* v. *Bragg,* 69 Ark. 402, 64 S. W. 226, 86 Am. St. Rep. 206:

"It is a fundamental rule of law that, to recover damages on account of the unintentional negligence of another, it must appear that the injury was the natural and probable consequence thereof, and that it ought to have been foreseen in the light of the attending circumstances."

The court should have given appellant's requested instructions Nos. 8 and 10, and erred in not doing so.

The first clause of instruction No. 7 is a correct declaration of law, but the second clause, declaring that, if the particular injury could not have been reasonably anticipated by a person of ordinary prudence and intelligence as the probable result of the act of negligence complained of, then the negligence was not actionable, and the verdict should be for the defendant, is not a correct declaration of law and the court did not err in refusing to give the instruction as requested.

"It is not necessary that the particular injury should have been foreseen," as said in *Pulaski Gas Light Co.* v. *McClintock, supra,* where the court quoted approvingly from *Foster* v. *Chicago, R. I. & P. Ry. Co.,* 4 Am. & Eng. Ann. Cas. 150, 127 Iowa 84, 102 N. W. 422, as follows:

"Doubtless the particular situation might not have been foreseen, but this was not essential to making out a charge of negligence. Accidents as they occur are seldom foreshadowed; otherwise many would be avoided. If the act or omission is of itself negligent and likely to result in injury to others, then the person guilty thereof is liable for the natural consequences which occurred, whether he might have foreseen it or not. In other words, if the act or omission is one which the party ought, in the exercise of ordinary care, to have anticipated was likely to result in injury to others, then he is liable for any injury proximately resulting therefrom, although he might not have foreseen the particular injury which did happen."

Also from *Baltimore & O. Rd. Co.* v. *Slaughter,* 7 L. R. A. (N. S.) 597, 167 Ind. 330, 79 N. E. 186:

"To entitle one to a trial of the question of another's negligence which resulted in injury, it is not necessary that the effect of the act or omission complained of in all cases, or even ordinarily, be to produce the consequences which followed; but it is sufficient if it is reasonably to be apprehended that such an injury might thereby occur to another while exercising his legal right in a careful manner."

The court also should have given appellant's instruction No. 5, as requested, without amendment.

The appellant was also entitled to have the question of whether the injury would not have occurred from the iron rod, in the hands of decedent, coming in contact with the primary wire, carrying the high voltage of electricity, regardless of whether same was insulated or not. The undisputed testimony showed that the insulation wears or comes off of such wires and that it is not practical to have them reinsulated, and that it is not done in the operation of such plants.

Appellant's testimony tends to show that the current would have come through such insulation as wires of this kind carry when new, anyway, and caused the injury upon contact with the rod, but it was not undisputed, and appellant had the right to have the question submitted to the jury.

It is urgently insisted that, in view of the location of the gin on a little used street, the public and its customers not passing by the door of the boiler-room ordinarily, defendant could not reasonably have anticipated, in the exercise of ordinary care, the use by the gin company of an 18-foot iron swab for cleaning its boiler flues, and that any injury would likely result at this place on its lines, either by reason of the uninsulated wire or by the height of same from the ground, and that the failure to foresee and anticipate any such event cannot be held to establish negligence.

It is doubtful if there is any negligence shown warranting recovery in this case, but the court will leave that to the determination of the jury under proper instructions.

The law does not compel electric companies to insulate their wires everywhere, but only at places where people may be reasonably expected to go for work, business or pleasure. "The duty to insulate does not extend to the entire system or to parts on the line where no one could reasonably be expected to come in contact with it." 20 C. J. 356.

This court has recognized the true rule in *Hines* v. *Consumers' Ice Co.,* 168 Ark. 914, 272 S. W. 59, where it was said:

"There is involved here no question about the duty of the electric light company to insulate all its wires. The authorities appear to be unanimous in holding that there is no such duty, but the cases do hold, as we understand them, that this duty must be performed, or other sufficient safety methods employed to prevent contact with wires conveying the current at such places as danger of

contact may reasonably be anticipated.'' See also 9 R. C. L., ''Electricity,'' § 21, page 1213.

From the street where the bare or exposed wire was strung is a distance of about 16 feet, which must have been at least 10 feet above the heads of men of ordinary height passing along the street, and there were no means or instrumentalities by which passersby, upon the street or sidewalk, could come in contact with the wire. The wires were not more than 5 feet from the front door of the boiler-room along Daugherty Avenue, however, upon which the boiler room fronted, and it may be that, in hauling and unloading coal, and unloading cotton at the gin and reloading baled cotton with wagons and trucks, some one engaged in such work might reasonably be expected to come in contact with the bare wire and be injured, and we therefore do not hold as a matter of law that there was no negligence.

For the errors designated the judgment is reversed, and the cause remanded for a new trial.