ARKANSAS POWER & LIGHT COMPANY *v.* ADCOCK.

Opinion delivered November 9, 1931.

*Robinson, House & Moses* and *Frank Bird,* for appellant.

*John E. Miller* and *C. E. Yingling,* for appellee.

HUMPHREYS, J.   Appellee, as father and as administrator of the estate of his deceased minor son, brought this suit against appellant in the circuit court of White County to recover damages in the sum of $7,500 for the loss of his son's services and $15,000 on behalf of the estate for the pain and suffering endured by the deceased, who was killed by electricity received from a transmission line owned by appellant, who had negligently permitted it to sag near the ground across the cotton field of George Anders, about one and one quarter miles west of Pangburn.

Defendant filed an answer, denying the material allegations of the complaint, and also pleaded contributory negligence on the part of deceased as an affirmative defense to the alleged cause of action.

The case was submitted to the jury upon the pleadings, testimony adduced by the parties, and instructions of the court, resulting in a judgment for $2,500 in favor of appellee for the loss of his son's services and for $7,500 as administrator for his son's estate on account of the pain and suffering endured by deceased, from which is this appeal.

Appellant's first contention for a reversal of the judgment is that the testimony fails to show any negligence by appellant causing the death of appellee's son. The proper interpretation of the testimony, viewed in its most favorable light for appellee, reflects that appellant failed to repair its transmission line within a reasonable time after being dislodged from its support by the force of an electric storm, so that it hung within four or five feet from the ground across a cotton field owned by Anders in the vicinity of Pangburn. Appellee's son was engaged in picking cotton in the field across which the transmission line was suspended at the time he was killed by electricity escaping from the line. On Thursday night, September 23, 1930, an electric storm visited the town of Pangburn, and appellant's transmission line running across the cotton field was struck by lightning, demolishing one post and badly splintering three others. The injury to the posts and cross-arms caused one of the lines to sag within four or five feet of the ground for a considerable distance, where it remained unrepaired and unguarded until about nine o'clock A. M. Saturday, or for a period of about forty-eight hours. The line was carrying about 13,000 volts of electricity. At a time when deceased, who was picking cotton in the field, approached and was in near proximity to the wire, the electricity suddenly arcked to his body and produced the injury which resulted in his death. Appellant's manager at Pangburn knew of the storm Thursday night when it occurred. The lightning that struck the line put out the lights in Pangburn for awhile. Friday morning he sold some fuse plugs to persons to replace some which the lightning had burned out during the electrical storm. The substation near Searcy was equipped with kick-out switches and also a voltmeter for the purpose of registering disturbances along the line. When the employees came to the substation Friday morning, they discovered that the switch had been kicked out, and that the voltmeter had registered a disturbance on the line. The line had cleared, and there was nothing to indicate the character of the dis-

turbance. All that the warning devices indicated was that there had been a disturbance of some kind on the line caused by lightning. We think this information, coupled with the manager's knowledge that there had been a severe electrical storm, was sufficient to warrant the submission to the jury of the issue of appellant's alleged negligence in failing to patrol and inspect the line after the storm. It is clearly the duty of an electrical company to use due diligence to discover and repair defects in its system. 9 R. C. L., sec. 25, p. 17. It follows that diligence would require an immediate patrol and inspection of lines where the warning devices had indicated disturbances caused by lightning during a severe electrical storm.

Appellant's next contention for a reversal of the judgment is that the undisputed testimony reflects that deceased negligently caused his own death by walking up to the wire and starting to take hold of it for the purpose of showing his companions that there was no danger in touching a single wire, although warned not to do so. If this were the only reasonable deduction that could be drawn from the evidence, then deceased would have been guilty of contributory negligence, and appellee could not recover. There was testimony, however, tending to show that deceased turned to the right into another cotton row where the wire was higher than in his row, and said to one of his companions, "Look," and as he raised either his right or left hand, some amount of electricity arcked from the wire into his body, knocking him to the ground, which injury resulted in his death. It is argued by appellant that the only purpose he could have had in raising his hand was to touch the wire, because he had remarked to his companion that there was no danger in a single wire. It may be that he raised his hand inadvertently, for he did not tell any one that he intended to touch the wire. Had it been his purpose to touch the wire, he could have done so where he was standing before he turned to the right. Two of his companions had stooped down to walk under the wire, and it may be that

he intended to follow their example and had turned to the right where the wire was higher and easier for him to do so. As to why he raised his hand is entirely problematical, and the conclusive inference cannot be indulged that he intended to touch the wire because he raised his hand. The burden rested upon appellant to show by undisputed evidence that he raised his hand for the purpose of touching the wire before the court could declare as a matter of law that deceased was guilty of contributory negligence. Appellant has not met this burden, and, in view of the conflict in the evidence, it was proper for the court to submit the issue of contributory negligence to the jury for determination.

Appellant's next contention for a reversal of the judgment is that the court erred in giving instruction No. 6 at the request of appellee, which is as follows:

"You are instructed that contributory negligence is doing of something that a person of ordinary prudence would not do, or the failure to do something that a person of ordinary prudence would do under the circumstances; and in this case, in determining whether deceased was guilty of contributory negligence, you should consider the facts in the light of the circumstances as they existed at the time, and the age and experience and knowledge of the deceased, of the experience and knowledge that a person of the age of deceased should have had."

We think this declaration of law clearly announces the test of contributory negligence on the part of minors. This court ruled that the standard for determining whether a minor is guilty of contributory negligence is what one of his age, intelligence, and discretion would do under the same circumstances, in the case of *Kansas City Railway Company* v. *Teater,* 124 Ark. 1, 186 S. W. 294.

Appellant next contends for a reversal of the judgment on the ground that the instructions requested by appellee and given by the court impose upon appellant the "high degree of care" standard, instead of "ordinary degree of care" standard. We have carefully read

the instructions, and none of them told the jury that appellant owed appellee any other duty than that of reasonable care. The rule of law is that, in handling explosives and other very dangerous agencies, under certain circumstances in the exercise of reasonable care, the one so handling them must do so with a high degree of care. *Pine Bluff Company* v. *Bobbitt,* 168 Ark. 1019, 273 S. W. 1; *Arkansas Power & Light Co.* v. *Cates,* 180 Ark. 1003, 24 S. W. (2d) 846. This idea or principle ran through the instructions, but the effect thereof was not to tell the jury that appellant owed appellee a high degree of care as they were told in the case of *Morgan* v. *Cockrill,* 173 Ark. 910, 294 S. W. 44, cited by appellant in support of its argument that the instructions given by the court were erroneous.

Appellant's next contention for a reversal of the judgment in favor of the estate is that the undisputed evidence shows that the deceased was instantly killed and therefore suffered no pain. There is evidence in the record, that as he was falling, he exclaimed, "Oh, me," as many as two times, and that after falling, he tried to get up on his hands and knees. After his efforts to arise, he only moved his legs and arms, and, to all appearances, was unconscious. He did not breathe his last until he was carried about seventy yards to the wagon for removal. After the attempt to rise, deceased was mute and did not groan or emit any sound evidencing pain or suffering. In view of the fact that he was conscious only for a few moments, the court is of the opinion that the verdict for pain and suffering was excessive, and should be, and is, reduced to $3,000.

Appellant's next contention for a reversal of the judgment in favor of appellee on his own behalf is that it was excessive. Deceased was 17½ years of age at the time of his death and resided with his father on a 51-acre farm, and assisted his father in cultivating same. They raised about thirty acres of cotton in addition to the cereals they raised. He was very industrious and helped with all the work around the place and saved the neces-

sity of hiring a helper. He attended school about seven months out of the year, and at such times as he was not going to school or working on the farm he obtained other employment and earned enough to pay for his clothing. Appellee testified that the services of his son were worth at least $1,000 net a year. The jury allowed $2,500 to appellee for the loss of his son's services. We do not think that any boy can earn as much as $1,000 a year net on a farm of 51 acres, working during crop seasons and choring around the place. We think the estimate of appellee, and it was necessarily an estimate, is an over-estimate, and that the jury's allowance for the loss of services of $2,500 was excessive and should be, and is, reduced to $2,000.

With these modifications, the judgment is affirmed.

Mr. Justice Kirby dissents.